## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RENE ARISPE | ) | |
| 5501 Columbia Pike, #303 | ) | |
| Falls Church, VA  22041 | ) | |
| | ) | Civil Action No. _____ |
| WALTER ARISPE-FLORES | ) | |
| 5501 Columbia Pike, #303 | ) | |
| Falls Church, VA  22041 | ) | |
| | ) | |
| MARCELO BELMONTE | ) | |
| 1005 Hollywood Avenue | ) | |
| Silver Spring, MD  20904 | ) | |
| | ) | |
| HERNANDO CARDOZO | ) | |
| 410 S. Kensington Street | ) | |
| Arlington, VA  22204 | ) | |
| | ) | |
| JACINTO CESPEDES | ) | |
| 3500 S. 15th Street | ) | |
| Arlington, VA  22204 | ) | |
| | ) | |
| BALTAZAR JARAMILLO | ) | |
| 9113 Shearman Street | ) | |
| Fairfax, VA  22032 | ) | |
| | ) | |
| MIGUEL LINARES | ) | |
| 4918 Althea Drive | ) | |
| Annandale, VA  22003 | ) | |
| | ) | |
| LUIS ROCHA | ) | |
| 3244 Holly Berry Ct. | ) | |
| Falls Church, VA  22042 | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMONWEALTH WALL | ) | |
| SYSTEMS, LLC | ) | |
| 5520 Cherokee Avenue, Suite 215 | ) | |
| Alexandria, VA  22312 | ) | |
| | ) | |

| | |
|---|---|
| S & J ACOUSTICS, INC. | ) |
| 3808 Lake Boulevard | ) |
| Annandale, VA  22003 | ) |
| | ) |
| RG ACOUSTICS, LLC | ) |
| 3808 Lake Boulevard | ) |
| Annandale, VA  22003 | ) |
| | ) |
| RICHARD B. SISK | ) |
| 14514 Hamowell Street | ) |
| Manassas, VA  20112 | ) |
| | ) |
| RICHARD UNGER | ) |
| 624 South Pitt Street | ) |
| Alexandria, VA  22314 | ) |
| | ) |
|       Defendants. | ) |
| _____ | ) |

## COMPLAINT FOR UNPAID WAGES

### Introduction

1.      Plaintiffs bring this action for damages for Defendants' willful failure to pay Plaintiffs

overtime wages, in violation of: the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*,

and the District of Columbia Minimum Wage Act Revision Act ("DCMWA"), D.C. Code § 32-

1001 *et seq.*

### Jurisdiction and Venue

2.      Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 29

U.S.C. § 216(b) (FLSA jurisdiction); and 28 U.S.C. § 1367 (supplemental jurisdiction).

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts or

omissions giving rise to Plaintiffs' claims occurred in this district.

### Parties

4.      Plaintiffs are adult residents of Virginia or Maryland.

5.      Defendant Commonwealth Wall Systems, LLC ("Commonwealth") is a Delaware corporation that regularly conducts business in the District of Columbia.

6.      Commonwealth maintains its principal office at: 5520 Cherokee Avenue, Suite 215; Alexandria, VA 22312.

7.      Commonwealth's resident agent for service of process is: Corporation Service Company; Bank of America Center; 1111 E. Main Street, 16th Floor; Richmond, VA 23219.

8.      Defendant S & J Acoustics, Inc. ("S & J") was a Virginia corporation that regularly conducted business in the District of Columbia through February 2013.

9.      S & J maintained its principal office at: 3803 Lake Boulevard; Annandale, VA 22003.

10.      S & J lost its corporate status on March 31, 2012.

11.      After March 31, 2012, S & J continued to operate as a sole proprietorship owned and operated by Defendant Richard B. Sisk.

12.      S & J's resident agent for service of process is: Richard B. Sisk; 14514 Hamowell Street; Manassas, VA 20112.

13.      Defendant RG Acoustics LLC ("RG") is a Virginia corporation that regularly conducts business in the District of Columbia.

14.      RG was formed by Defendant Richard B. Sisk on March 3, 2013.

15.      On information and belief, RG is a successor corporation to Defendant S & J.

16.      On information and belief, Defendant Richard B. Sisk caused S & J to gift all of its assets to RG in a sham transaction.

17.      RG's principal office is located in the same single-family home as was S & J's: 3808 Lake Boulevard; Annandale, VA  22003.

18.     RG's resident agent for service of process is: United States Corporation Agents, Inc.; 4870 Sadler Road, Suite 300; Glen Allen, VA 23060.

19.     Defendant Richard B. Sisk ("Sisk") is an adult resident of Virginia.

20.     Sisk owned and operated Defendant S & J from 2000 to March 31, 2012.

21.     Sisk owned and operated an unincorporated sole proprietorship trading as "S & J Acoustics, Inc." from April 1, 2012, until March 3, 2013.

22.     Sisk owns and operates and is the president of Defendant RG, which was formed on March 3, 2013.

23.     Defendant Richard Unger ("Unger") is an adult resident of Virginia.

24.     Unger owns and operates and is the president of Defendant Commonwealth.

## Factual Allegations

25.     Plaintiffs worked for Defendants at a construction project ("Project") located in a building owned by the International Bank for Reconstruction Development, located at 600 19th Street NW; Washington, DC 20431 (a.k.a. 1914 G Street NW).

26.     Generally speaking, the project involved modifications to the interior of the building in conjunction with a long-term lease by the U.S. Department of State.

27.     Plaintiffs were hired by Defendant Commonwealth. On information and belief, Defendant Unger then arranged with Defendant Sisk to have Plaintiffs paid in checks bearing the name of Defendant Sisk's defunct corporation: Defendant S & J. After the project, S & J stopped doing business, gifted all of its assets to Defendant RG, and was reincarnated as Defendant RG.

28.     On information and belief, Defendants Sisk and Unger have entered into similar arrangements in the past.

29.     Plaintiffs' work on the Project was supervised by:

4

    a.      Sandro Federfino, employed by Defendant Commonwealth as a "foreman";

    b.      Karl Blaine Johnson, employed by Defendant Commonwealth as a "foreman";

    c.      Sam Shakra, employed by Defendant Commonwealth as a "foreman";

    d.      Mark Hartley, employed by Defendant Commonwealth as a "supervisor";

    e.      Ali Khosravi, employed by Defendant Commonwealth as a "vice president"; and

    f.      Defendant Richard Unger, the owner, operator, and president of Defendant Commonwealth.

30.    Sandro Federfino, Karl Blaine Johnson, and Sam Shakra, all employees of Defendant Commonwealth, directed the work of the Plaintiffs on a daily basis as on-site foremen, assigning tasks throughout the course of the workday, and reviewing the work of the Plaintiffs.

31.    Mark Hartley, employee of Defendant Commonwealth Wall Systems, was the supervisor of Sandro Federfino, Karl Blaine Johnson, and Sam Shakra. He was frequently present at the Project, assigning tasks to the Plaintiffs and reviewing their work. He threatened to fire some of the plaintiffs. And he did in fact hire and/or fire some of the Plaintiffs. He passed instructions from Ali Khosravi and Defendant Richard Unger to the on-site foremen or the Plaintiffs themselves.

32.    Ali Khosravi and Defendant Richard Unger were periodically present at the Project, assigning tasks to the Plaintiffs and reviewing their work. They had the power to hire and fire the Plaintiffs. They were responsible for setting the Plaintiffs' schedules and method and rate of pay.

33.    Defendant Richard Sisk was only present at the Project during some mornings. He did not set the Plaintiffs schedules, or direct or supervise their work.

34.    Plaintiffs time records were kept by Defendant Commonwealth on Commonwealth time-sheets.

35.     Plaintiffs were not provided paystubs; but rather, were provided checks bearing the corporate name "S & J Acoustics."

36.     Defendants collectively provided all of the supplies and equipment that the Plaintiffs used to do their work.

37.     At all relevant times, Defendants collectively constituted an "enterprise" within the meaning of the FLSA.

38.     At all relevant times, Defendants were joint employers of Plaintiffs within the meaning of 29 C.F.R. § 791.2.

39.     At all relevant times, Defendants had more than two employees, and had an annual gross volume of sales made or business done of $500,000.00.

40.     At all relevant times, the Plaintiffs were  engaged in commerce or in the production of goods for commerce.

41.     At all relevant times, Defendants controlled the hours that Plaintiffs worked, the manner in which they were paid, and the conditions of their employment.

42.     At all relevant times, Plaintiffs worked at premises controlled by Defendants, using equipment and materials provided by the Defendants.

43.     At all relevant times, Defendants had the power to hire and fire the Plaintiffs.

44.     At all relevant times, Defendants did not maintain true and accurate records of each hour, day, and week worked by Plaintiffs, as required by 29 C.F.R. § 516 and D.C. Code § 32-1008.

45.     The exact amount of hours worked by and wages owed to Plaintiffs will only be known through discovery.

46.     Defendants were aware that they were legally required to pay Plaintiffs one and one-half times the applicable minimum wage for all hours worked in excess of 40 hours in any one workweek.

**Rene Arispe**

47.    Plaintiff Rene Arispe was hired by Defendant Commonwealth at Commonwealth's offices in Alexandria, VA. There, an employee of Commonwealth instructed Rene Arispe to fill out a job application and various tax forms, including a W-4.

48.    Rene Arispe worked as a carpenter on the Project.

49.    Rene Arispe worked on the project from approximately July 2, 2012 through approximately January 15, 2013.

50.    With the exception of his last workweek, Rene Arispe was paid $19.00 per hour for each hour that he worked on the project, whether or not he worked more than 40 hours in a workweek. In addition, Rene Arispe was not paid for his final workweek, in which he worked 32 hours.

51.    Rene Arispe should have been paid $28.50 per overtime hour, or $9.50 more per hour than he was actually paid per overtime hour.

52.    Rene Arispe worked approximately 257 overtime hours on the Project, for which he is owed approximately $2,441.50. Rene Arispe is owed an additional $608.00 in compensation for non-overtime hours, for a total of **$3049.50.**

**Walter Arispe-Flores**

53.    Plaintiff Walter Arispe-Flores was hired by Defendant Commonwealth at the site of the Project. An employee of Commonwealth instructed Walter Arispe-Flores to fill out various tax forms. After the forms were complete, the employee handed him an identification badge and gave him instructions on where and when to begin work.

54.    Walter Arispe-Flores worked as a carpenter on the Project.

55.    Walter Arispe-Flores worked on the project from approximately July 2, 2012 through approximately January 15, 2013.

56.     Walter Arispe-Flores was paid $19.00 per hour for each hour that he worked on the Project, whether or not he worked more than 40 hours in a workweek.

57.     Walter Arispe-Flores should have been paid $28.50 per overtime hour, or $9.50 more per hour than he was actually paid per overtime hour.

58.     Walter Arispe-Flores worked approximately 271 overtime hours on the Project, for which he is owed approximately **$2,574.50**.

**Marcelo Belmonte**

59.     Plaintiff Marcelo Belmonte was hired by Defendant Commonwealth at the site of the Project. An employee of Commonwealth instructed Marcelo Belmonte to fill out various tax forms. After the forms were complete, the employee handed him an identification badge and gave him instructions on where and when to begin work.

60.     Marcelo Belmonte worked as a carpenter on the Project.

61.     Marcelo Belmonte worked on the project from approximately July 2, 2012 through approximately October 8, 2012.

62.     Marcelo Belmonte was fired by Mark Hartley, a supervisor employed by Defendant Commonwealth.

63.     Marcelo Belmonte was paid $19.00 per hour for each hour that he worked on the Project, whether or not he worked more than 40 hours in a workweek.

64.     Marcelo Belmonte should have been paid $28.50 per overtime hour, or $9.50 more per hour than he was actually paid per overtime hour.

65.     Marcelo Belmonte worked approximately 92 overtime hours on the Project, for which he is owed approximately **$874.00**.

**Hernando Cardozo**

66.     Plaintiff Hernando Cardozo was hired by Defendant Commonwealth at the site of the Project. An employee of Commonwealth instructed Hernando Cardozo to fill out various tax forms. After the forms were complete, the employee handed him an identification badge and gave him instructions on where and when to begin work.

67.     Hernando Cardozo worked as a laborer on the Project.

68.     Hernando Cardozo worked on the project from approximately July 2, 2012 through approximately November 2, 2012.

69.     Hernando Cardozo was paid $15.00 per hour for each hour that he worked on the Project, whether or not he worked more than 40 hours in a workweek.

70.     Hernando Cardozo should have been paid $22.50 per overtime hour, or $7.50 more per hour than he was actually paid per overtime hour.

71.     Hernando Cardozo worked approximately 152 overtime hours on the Project, for which he is owed approximately **$1,140.00**.

**Jacinto Cespedes**

72.     Plaintiff Jacinto Cespedes was hired by Defendant Commonwealth at Commonwealth's offices in Alexandria, VA. There, an employee of Commonwealth instructed Jacinto Cespedes to fill out a job application and various tax forms, including a W-4.

73.     Jacinto Cespedes worked as a carpenter on the Project.

74.     Jacinto Cespedes worked on the project from approximately July 2, 2012 through approximately January 15, 2013.

75.     Jacinto Cespedes was paid $20.00 per hour for each hour that he worked on the Project, whether or not he worked more than 40 hours in a workweek.

76.     Jacinto Cespedes should have been paid $30.00 per overtime hour, or $10.00 more per hour than he was actually paid per overtime hour.

77.     Jacinto Cespedes worked approximately 261 overtime hours on the Project, for which he is owed approximately **$2,610.00**.

**Baltazar Jaramillo**

78.     Plaintiff Baltazar Jaramillo was hired by Defendant Commonwealth at the site of the Project. An employee of Commonwealth instructed Baltazar Jaramillo to fill out various tax forms. After the forms were complete, the employee handed him an identification badge and gave him instructions on where and when to begin work.

79.     Baltazar Jaramillo worked as a carpenter on the Project.

80.     Baltazar Jaramillo worked on the project from approximately July 2, 2012 through approximately January 15, 2013.

81.     Baltazar Jaramillo was paid $18.00 per hour for each hour that he worked on the Project, whether or not he worked more than 40 hours in a workweek.

82.     Baltazar Jaramillo should have been paid $27.00 per overtime hour, or $9.00 more per hour than he was actually paid per overtime hour.

83.     Baltazar Jaramillo worked approximately 153 overtime hours on the Project, for which he is owed approximately **$1,377.00**.

**Miguel Linares**

84.     Plaintiff Miguel Linares was hired by Defendant Commonwealth at the site of the Project. An employee of Commonwealth instructed Marcelo Belmonte to fill out various tax forms. After the forms were complete, the employee handed him an identification badge and gave him instructions on where and when to begin work.

85.     Miguel Linares worked as a carpenter on the Project.

86.     Miguel Linares worked on the project from approximately July 2, 2012 through approximately October 8, 2012.

87.     Miguel Linares was fired by Mark Hartley, a supervisor employed by Defendant Commonwealth.

88.     Miguel Linares was paid $19.00 per hour for each hour that he worked on the Project, whether or not he worked more than 40 hours in a workweek.

89.     Miguel Linares should have been paid $28.50 per overtime hour, or $9.50 more per hour than he was actually paid per overtime hour.

90.     Miguel Linares worked approximately 84 overtime hours on the Project, for which he is owed approximately **$798.00**.

**Luis Rocha**

91.     Plaintiff Luis Rocha was hired by Defendant Commonwealth at the site of the Project. An employee of Commonwealth instructed Luis Rocha to fill out various tax forms. After the forms were complete, the employee handed him an identification badge and gave him instructions on where and when to begin work.

92.     Luis Rocha worked as a carpenter on the Project.

93.     Luis Rocha worked on the project from approximately July 2, 2012 through approximately October 20, 2012.

94.     Luis Rocha was paid $18.00 per hour for each hour that he worked on the Project, whether or not he worked more than 40 hours in a workweek.

95.     Luis Rocha should have been paid $27.00 per overtime hour, or $9.00 more per hour than he was actually paid per overtime hour.

96.     Luis Rocha worked approximately 138 overtime hours on the Project, for which he is owed approximately **$1,242.00**.

## COUNT I
## FAILURE TO PAY MINMUM AND OVERTIME WAGES UNDER THE FLSA
### (29 U.S.C. § 201 *et seq.*)

97.     Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

98.     Plaintiffs were "employees" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

99.     Plaintiffs were "non-exempt" employees of Defendants within the meaning of the FLSA, 29 U.S.C. § 213.

100.    Defendants were "employers" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

101.    The FLSA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one work week. 29 U.S.C. § 207(a)(1).

102.    Defendants violated the FLSA by knowingly failing to pay Plaintiffs one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one work week.

103.    Defendants' violations of the FLSA were willful.

104.    For their violations of the FLSA, Defendants are liable to Plaintiffs for unpaid overtime compensation, plus an equal amount as liquidated damages, plus court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

## COUNT II
## FAILURE TO PAY MINIMUM AND OVERTIME WAGES UNDER THE DCMWA
### (D.C. Code § 32-1001 *et seq.*)

105.    Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

106.    Plaintiffs were "employees" of Defendants within the meaning of the DCMWA, D.C. Code § 32-1002(2).

107.    Plaintiff were "non-exempt" employees of Defendants within the meaning of the DCMWA, D.C. Code § 32-1004.

108.    Defendants were "employers" of Plaintiffs within the meaning of the DCMWA, D.C. Code § 32-1002(3).

109.    The DCMWA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek. D.C. Code § 32-1003(c).

110.    Defendants violated the DCMWA by knowingly failing to pay Plaintiffs one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one work week.

111.    Defendants' violations of the DCMWA were willful.

112.    For their violations of the DCMWA, Defendants are liable to Plaintiffs for unpaid minimum and overtime compensation, plus an equal amount as liquidated damages, plus court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against all Defendants, jointly and severally, in Plaintiffs' favor on all counts, and grant the following relief:

a.      Award Plaintiffs unpaid overtime wages, and an equal amount as liquidated damages, pursuant to 29 U.S.C. § 216;

b.      Award Plaintiffs unpaid overtime wages, and an equal amount as liquidated damages, pursuant to D.C. Code § 32-1012;

c.      Award Plaintiffs their reasonable attorneys' fees, expenses and costs of court;

d.      Award Plaintiffs pre-judgment and post-judgment interest as allowed by law; and

e.      Award any additional relief the Court deems just.


Date: October 16, 2013

/s/Justin Zelikovitz
Justin Zelikovitz (#986001)
Law Office of Justin Zelikovitz PLLC
409 U Street NW
Washington, DC 20001
T: (202) 445-6960
F: (202) 683-6102
justin@dcwagelaw.com

*Counsel for Plaintiffs*